**M. Ryan Casey, OSB # 152824**
ryan@rcaseylaw.com
THE CASEY LAW FIRM, LLC
PO Box 1055
Silverthorne, CO 80498
Tel: (970) 372-6509

*Local Counsel for Plaintiff*

**Gillian L. Wade, *PHV app. forthcoming***
gwade@waykayslay.com
**Marc Castaneda, *PHV app. forthcoming***
marc@waykayslay.com
**Sara Avila, *PHV app. forthcoming***
sara@waykayslay.com
WADE KILPELA SLADE LLP
2450 Colorado Avenue, Suite 100E
Santa Monica, CA 90404
Tel: (310) 667-7273

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

LUCAS JAMES, a consumer residing in Oregon, individually and on behalf of all others similarly situated,

Plaintiff,

v.

HUMM KOMBUCHA LLC, an Oregon limited liability company, and DOES 1 through 10, inclusive,

Defendants.

Case No. ______________________

**CLASS ACTION ALLEGATION COMPLAINT**

Unlawful Trade Practices (28 U.S.C. § 1332)

DEMAND FOR JURY TRIAL

Plaintiff LUCAS JAMES ("Plaintiff"), individually and on behalf of all others similarly situated, makes the following allegations based on his personal knowledge, and otherwise, upon information and belief, including the investigation of counsel:

## NATURE OF THE ACTION

1. This consumer class action concerns a beverage sold on the strength of a promise—Zero Sugar—that its own ingredient list contradicts.

2. Defendant Humm Kombucha LLC ("Humm" or "Defendant") labels, markets, distributes, and sells a line of canned kombucha beverages under the name "Humm Probiotic Kombucha Zero Sugar," sold in varieties including Açaí Blueberry, Blood Orange, Peach Tea, and Raspberry Lemonade (collectively, the "Product" or "Products").

3. Through its labeling, on the front of every can, Defendant represents in prominent type that the Product contains "ZERO SUGAR," and reinforces that representation with a front-of-package seal reading "0 GRAMS SUGAR."

4. The representation is false. Every can of the Product is sweetened with allulose — listed on the ingredient statement as "ALLULOSE SYRUP," the single largest ingredient after the kombucha base itself.

5. Allulose is a sugar. As a monosaccharide, it falls squarely within the Food and Drug Administration's ("FDA") codified definition of "Total Sugars," which is "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." 21 C.F.R. § 101.9(c)(6)(ii). Federal regulation forbids a manufacturer from labeling a food "sugar free," "zero sugar," or any similar term unless the food "contains less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii)," per labeled serving. 21 C.F.R. § 101.60(c)(1)(i).

6. Each 12 fl. oz. can of the Product — a single labeled serving — contains, upon information and belief, approximately ten (10) grams of allulose: roughly twenty times the amount of sugar that federal law permits in a product bearing a "zero sugar" claim.

7. This is not a novel or contested proposition. On July 27, 2026, the United States Court of Appeals for the Seventh Circuit held — in a case involving a "zero sugar" yogurt sweetened with four grams of allulose per serving — that "[a]llulose is a sugar under the relevant federal regulation," that consumers had plausibly alleged deception from an unqualified sugar-free claim, and that state-law consumer protection claims premised on that deception are not preempted by the Federal Food, Drug, and Cosmetic Act. *Franco v. Chobani, LLC*, No. 25-2087, slip op. at 2, 7 (7th Cir. July 27, 2026). The FDA, appearing as amicus curiae at the court's invitation, took the same position: the text of § 101.9(c)(6)(ii) is unambiguous, and "total sugars" as defined in that regulation includes all monosaccharides, including allulose. *Id.* at 6.

8. Upon information and belief, Defendant's Product contains more than twice as much allulose per serving than the product at issue in *Franco*.

9. To this day, the asterisk following "ALLULOSE SYRUP" in Defendant's ingredient statement refers consumers not to any sugar disclosure but to the marketing statement "FROM PLANT-BASED INGREDIENTS."

10. Reasonable consumers, including Plaintiff, have suffered an ascertainable loss of money, measured, in the alternative, by: (a) the difference between the price paid for a beverage represented to contain zero sugar and the lower market value of the sweetened beverage they actually received; (b) the full purchase price paid for a transaction that federal and state law prohibited Defendant from making; or (c) the purchase price of a product Plaintiff would not have purchased but for Defendant's deceptive representations.

11. Accordingly, Plaintiff brings this action on his own behalf and on behalf of the National Class and Oregon Subclass defined below, to redress the unlawful conduct described herein.

12. Specifically, Plaintiff seeks redress for Defendant's reckless, knowing, and/or willful violations of Oregon's Unlawful Trade Practices Act, Or. Rev. Stat. §§ 646.605, *et seq.* ("UTPA"), for Breach of Express Warranty, and for Unjust Enrichment.

## **JURISDICTION AND VENUE**

13. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act, because: (a) the proposed Class contains more than 100 members; (b) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (c) minimal diversity exists. Defendant sells and/or sold the Product nationwide, with partnerships with major retailers.

14. Minimal diversity is satisfied on the face of this Complaint. Defendant is headquartered and has its principal place of business in Oregon. The proposed National Class includes consumers from all fifty states, and upon information and belief a substantial majority of those consumers are citizens of states other than Oregon. Those non-Oregon Class members are citizens of States different from Defendant, satisfying CAFA's minimal diversity requirement. 28 U.S.C. § 1332(d)(2)(A).

15. The discretionary and mandatory abstention provisions of 28 U.S.C. § 1332(d)(3) and (d)(4) do not apply. The proposed Class is not one in which greater than two-thirds — or even one-third — of the members are citizens of Oregon. Upon information and reasonable belief (based on Oregon's population), the Oregon Subclass constitutes a small fraction of the overall National Class. Nor are the principal injuries resulting from Defendant's

conduct confined to Oregon; Defendant distributes and sells the Product nationwide and the National Class encompasses consumers in all fifty states.

16. This Court has personal jurisdiction over Defendant because Defendant is an Oregon limited liability company with its principal place of business in Bend, Oregon. This Court additionally has specific personal jurisdiction over Defendant because Defendant designed, formulated, and approved the uniform labeling at issue from its Oregon headquarters.

17. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff resides in this District, was exposed to and deceived by Defendant’s product labeling and marketing representations in this District, and purchased the Product in this District, sustaining the injuries alleged herein.

18. Divisional Venue is proper under LR 3-2 because a substantial part of the events or omissions giving rise to the claim occurred in Multnomah County, including Plaintiff’s purchase of the Product.

## PARTIES

19. Plaintiff LUCAS JAMES is an Oregon citizen and resident of Multnomah County, and a member of the National Class and the Oregon Subclass alleged herein.

20. Defendant HUMM KOMBUCHA LLC is an Oregon limited liability company with its principal place of business in Bend, Oregon.

21. Upon best information and belief, Defendants DOES 1 through 10 are subsidiaries, partners, or other entities that were involved in the design, development, testing, packaging, promoting, marketing, advertising, distribution, labeling, and/or sale of the Product. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

22. Defendant engaged in the design, development, testing, packaging, promoting, marketing, advertising, distribution, labeling, and/or sale of the Product, and is responsible for the unlawful label representations and omissions complained of herein.

23. Defendant transacted and conducted business nationwide and within Oregon that relates to the allegations in this Complaint, and derived substantial revenue from goods bought and used therein, and/or otherwise purposefully availed itself of the privilege of conducting activities within the State of Oregon, thus invoking the benefits and protections of its laws.

## FACTUAL ALLEGATIONS

### A. Consumers Demand — and Pay More For — Products Without Sugar

24. There is unquestionably a growing demand in the United States for foods and beverages that contain no sugar.

25. Added and free sugars have been criticized in recent decades for their significant role in obesity, type 2 diabetes, heart disease, dental caries, and metabolic disease.

26. This understanding has profoundly affected consumer behavior. Industry survey research reflects that a substantial majority of American consumers are actively trying to limit or avoid sugars in their diets.

27. Manufacturers such as Defendant are, in turn, able to charge a price premium for products that satisfy this consumer demand. A "zero sugar" claim is among the most valuable nutrient content claims a beverage manufacturer can place on a package.

### B. Defendant Represents That the Product Contains Zero Sugar

28. Seeking to capitalize on this market, Defendant created, marketed, labeled, advertised, distributed, and sold Humm Probiotic Kombucha Zero Sugar.

29. The front label of every can of the Product bears the words "ZERO SUGAR" in prominent, contrasting type, positioned directly above the flavor designation and immediately below the brand name and the statement of identity "PROBIOTIC KOMBUCHA."

30. The front label further bears a circular badge or seal reading "0 GRAMS SUGAR," displayed alongside badges reading "2 BILLION+ PROBIOTICS" and "CERTIFIED ORGANIC."

31. Upon information and belief, the "ZERO SUGAR" representation appeared on every can of the Product sold during the applicable class period.

32. The following front label is illustrative:




33. Defendant repeats and expands the "zero sugar" message in the online marketing it controls. Taken individually and together, the message Defendant conveys is unqualified and

absolute: the Product contains no sugar, is not sweetened with sugar, and is appropriate for consumers who wish to avoid sugar entirely.

**C. The Product Is Sweetened With Allulose, Which Is a Sugar**

34. The representation is false. The Product is sweetened with allulose, with "ALLULOSE SYRUP" plainly stated on its ingredients statement immediately following "ORGANIC RAW CARBONATED KOMBUCHA."

35. Ingredients must be listed in descending order of predominance by weight. 21 C.F.R. § 101.4(a)(1). Allulose syrup is therefore the most predominant ingredient in the Product other than the kombucha base itself.

36. Allulose is a sugar. It is a naturally occurring monosaccharide — specifically, an epimer of fructose — that occurs in small quantities in wheat, figs, raisins, maple syrup, and molasses, and that is manufactured commercially at scale for use as a sweetener.

37. The Product's own Nutrition Facts panel confirms the presence of substantial quantities of allulose. Each 12 fl. oz. (355 mL) serving — one can — declares 10 grams of Total Carbohydrate, 0 grams of Total Sugars, 0 grams of Added Sugars, 0 grams of protein, and 0 grams of fat. The panel declares no dietary fiber and no sugar alcohols, stating that the Product is "[n]ot a significant source of … dietary fiber."

38. Because the Product contains no protein, no fat, no fiber, and no sugar alcohols, and because allulose is the only carbohydrate-contributing sweetener in the formulation, essentially the entirety of the declared 10 grams of Total Carbohydrate consists of allulose.

39. The declared calorie content corroborates this. Upon information and belief, allulose is assigned a caloric value of approximately 0.4 kilocalories per gram for purposes of calculating the calories declared on food labels. Ten grams of allulose would therefore account

for approximately four kilocalories of the Product's declared 10 calories per can, with the balance attributable to the Product's other ingredients. The Product's declared calories are thus consistent with a carbohydrate content composed essentially of allulose..

40. Accordingly, upon information and belief, each 12 fl. oz. can of the Product contains approximately ten (10) grams of allulose.

41. Ten grams of sugar is twenty times the 0.5-gram threshold that federal regulation permits in a product bearing a “zero sugar” claim. 21 C.F.R. § 101.60(c)(1)(i).

42. Defendant does not disclose the quantity of allulose in the Product anywhere on the package, on its website, or in its online marketing. A consumer cannot determine from any information Defendant provides how much sugar the Product contains.

43. Defendant’s “zero sugar” claim — indeed, the very name of the Product itself — is demonstrably false. Humm Probiotic Kombucha Zero Sugar is kombucha sweetened with sugar.

**D. Federal Law Prohibits Defendant’s “Zero Sugar” Claim**

44. Plaintiff does not seek to enforce the Federal Food, Drug, and Cosmetic Act (“FFDCA”) or any FDA regulation, and does not plead a private right of action thereunder. Plaintiff’s state-law claims, however, are not inconsistent with federal law or regulations. To the contrary, Defendant’s conduct violates the federal requirements.

45. Congress empowered the FDA to oversee and regulate food labeling through the FFDCA, as amended by the Nutrition Labeling and Education Act. 21 U.S.C. § 301, *et seq.*

46. The FDA regulations draw a sharp distinction between two types of food label statements: (i) declarations made within the Nutrition Facts panel, and (ii) nutrient content claims made elsewhere on the label.

47. None of Plaintiff's claims relates to or depends upon any declaration made within the four walls of the Nutrition Facts panel of the Product.

48. At issue in this case are the separate, deceptive nutrient content claims that Defendant has placed on the principal display panel of the Product and throughout its marketing.

49. A nutrient content claim is a statement that "expressly or implicitly characterizes the level of a nutrient" such as sugar. 21 C.F.R. § 101.13(b). The "ZERO SUGAR" and "0 GRAMS SUGAR" statements on the Product's front label are all nutrient content claims.

50. Nutrient content claims are forbidden unless specifically authorized. 21 C.F.R. § 101.13 provides that a nutrient content claim "may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D[.]"

51. Within Subpart D, 21 C.F.R. § 101.60(c)(1) specifically governs the use of the terms "sugar free," "zero sugar," "no sugar," and similar terms. That regulation provides that "[a] food may not be labeled with such terms unless":

> (i) The food contains less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving …; and
>
> (ii) The food contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar" …

21 C.F.R. § 101.60(c)(1)(i)-(ii).

52. The requirements of § 101.60(c)(1) are conjunctive. A food must satisfy all prongs. The Product violates two.

**E. The Product Fails § 101.60(c)(1)(i): It Contains Far More Than 0.5 Grams of Sugar**

53. To determine the amount of sugar in a food for purposes of § 101.60(c)(1)(i), the regulation cross-references 21 C.F.R. § 101.9(c)(6)(ii), which defines "[t]otal [s]ugars" as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)."

54. Allulose, as a monosaccharide, falls squarely within this definition. The parenthetical list of examples that follows the definition is illustrative, not limiting; the FDA "defined a class by way of chemistry" and "reinforced that definition through examples, all of which share the same chemical structure." *Franco*, slip op. at 8.

55. In 2026, the FDA affirmed that position in an amicus brief filed at the invitation of the Seventh Circuit, taking the view that the text of § 101.9(c)(6)(ii) is unambiguous and that total sugars as defined in that regulation include all monosaccharides, including allulose. The Seventh Circuit found the agency's reading persuasive and adopted it. *Franco*, slip op. at 6–7.

56. Because allulose is a sugar under § 101.9(c)(6)(ii), the approximately ten grams of allulose in each can of the Product must be included when calculating the amount of sugar for purposes of the 0.5-gram threshold in § 101.60(c)(1)(i).

57. The Product exceeds that threshold by a factor of approximately twenty. Defendant's "ZERO SUGAR" and "0 GRAMS SUGAR" claims are therefore prohibited by federal law.

**F. The Product Fails § 101.60(c)(1)(ii): Allulose Syrup Bears No Sugar Disclosure**

58. Under § 101.60(c)(1)(ii), a food may bear a "zero sugar" or "sugar free" claim only if it "contains no ingredient that is a sugar or that is generally understood by consumers to

contain sugars" unless that ingredient is followed in the ingredient statement by an asterisk referring to one of three prescribed statements: "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar."

59. The Product contains allulose syrup, an ingredient that is a sugar or is generally understood by consumers to contain sugar. It is not denoted with the asterisk and/or statement that § 101.60(c)(1)(ii) requires.

60. Accordingly, the Product is "misbranded" under federal law. 21 U.S.C. § 343(r).

**G. Defendant Acted Knowingly, Recklessly, and Willfully**

61. Defendant formulated the Product. Defendant selected allulose syrup as its sweetener, specified the quantity used, and knows precisely how many grams of allulose each can contains.

62. Defendant knew or recklessly disregarded that allulose is a monosaccharide and therefore a sugar within the meaning of 21 C.F.R. § 101.9(c)(6)(ii). That fact is stated in rulemaking and guidance documents, and in the filings of the principal commercial supplier of allulose, all of which were publicly available throughout the applicable class period.

63. Defendant knew or recklessly disregarded that nationwide class litigation challenging a materially identical "zero sugar" allulose claim had been pending and publicly docketed since May 2023. See *Franco v. Chobani, LLC*, No. 1:23-cv-03047 (N.D. Ill.).

64. Defendant is a sophisticated food and beverage manufacturer with a regulatory compliance function, which distributes a nationally marketed product line has previously been sued over the labeling of these very beverages. It is charged with knowledge of the federal food labeling requirements governing its products, and of the corresponding requirements in Oregon.

65. Defendant nonetheless continued to label, advertise, and sell the Product as containing "ZERO SUGAR" and "0 GRAMS SUGAR."

66. Defendant did so because the "zero sugar" claim is commercially valuable. Defendant knew that it could charge more for a beverage represented to contain no sugar, and could reach consumers who would not otherwise purchase a sweetened beverage at all.

67. The conduct complained of herein was no isolated incident or one-time mistake. It occurred over years, with respect to every can of the Product Defendant manufactured, labeled, advertised, and sold during the applicable class period.

**H. Plaintiff's Purchase and Injury**

68. On or about August 7, 2026, Plaintiff purchased the Product — specifically, "Humm Probiotic Kombucha Zero Sugar Raspberry Lemonade" for approximately $7.49, and directed its delivery to his residence in Oregon.

69. Before and at the time of his purchase, Plaintiff saw and read the "ZERO SUGAR" representation on the Product's packaging and on the product images and description Defendant caused to be displayed, including the front-of-can "ZERO SUGAR" statement and the "0 GRAMS SUGAR" seal.

70. Plaintiff understood these representations to mean what they said: that the Product contained no sugar.

71. Those representations were material to Plaintiff. Plaintiff would not have purchased the Product, or would not have paid the price paid for it, had he known that each can contained approximately ten grams of a sugar.

72. In reliance on Defendant's representations, Plaintiff purchased the Product.

73. Plaintiff did not receive what he paid for. He paid for a beverage containing zero sugar and received a beverage sweetened with approximately ten grams of sugar per can.

74. A kombucha beverage that actually contains zero sugar is inherently worth more than the Product Plaintiff and the Class actually received. The difference between the price paid and the actual value of the Product received constitutes an ascertainable loss of money.

75. Alternatively, Plaintiff and the Class suffered ascertainable loss because they paid money in a transaction that Defendant was not lawfully permitted to make. The Product, as labeled, could not lawfully be sold in Oregon or nationwide. Money paid in such an unlawful transaction is itself an ascertainable loss, regardless of the market value of the goods received.

## CLASS ACTION ALLEGATIONS

76. Plaintiff brings this class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all members of the following class and subclass:

> National Class
> All persons in the United States who purchased Humm Probiotic Kombucha Zero Sugar for personal use and not for resale.
>
> Oregon Subclass
> All persons who purchased Humm Probiotic Kombucha Zero Sugar in Oregon for personal use and not for resale.

77. Specifically excluded from the proposed National Class and Oregon Subclass are Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, the Judge assigned to this action, and the legal representatives of such persons.

78. The applicable limitations period referred to by the class definition is expansive and extends back years or decades based on the "delayed discovery" rule explicitly provided for in the Oregon Unlawful Trade Practices Act. See Or. Rev. Stat. § 646.638(6). Defendant's unlawful labeling and/or sales practices have been pervasive for many years (the exact length of time will be subject to discovery and proof). By design, the false labeling, marketing, and/or sales scheme was hidden and impossible for the typical consumer to discover. Plaintiff and class members did not know, and could not have known, that the representations regarding sugar content were false. Thus, the applicable limitations period—and the corresponding class period—extends back to the very first date Defendant began selling the Product.

79. Subject to additional information obtained through further investigation and discovery, the foregoing definitions may be expanded or narrowed by amendment or amended complaint.

Federal Rules of Civil Procedure, Rule 23(a) Factors

80. **Numerosity**. Membership in the National Class and Oregon Subclass is so numerous that separate joinder of each member is impracticable. The precise number of members is unknown at this time but can be readily determined from Defendant's records. Plaintiff reasonably estimates that there are at least thousands of persons in each class.

81. **Adequacy of Representation**. Plaintiff will fairly and adequately represent and protect the interests of the members of the National Class and Oregon Subclass. Plaintiff has retained counsel highly experienced in complex consumer class action litigation, and intends to prosecute this action vigorously. Plaintiff has no interests antagonistic to those of either class.

82. **Typicality**. Plaintiff's claims are typical of the claims of the members of the classes. Plaintiff and all class members purchased the Product bearing the label claims

complained of herein, and sustained the same injuries arising out of Defendant's uniform conduct.

83. **Commonality**. There are numerous and substantial questions of law and fact common to all members sufficient to satisfy Rule 23(a), and that control this litigation and predominate over any individual issues. Included within the common questions are:

a) Whether Defendant represents that the Product contains zero sugar;

b) Whether allulose is a "sugar" within the meaning of 21 C.F.R. § 101.9(c)(6)(ii);

c) Whether the Product contains 0.5 grams or more of sugar per labeled serving;

d) Whether the Product's labeling complies with 21 C.F.R. §§ 101.13 and 101.60(c)(1);

e) Whether the Product as represented by Defendant is inherently worth more than the Product actually received by Class Members;

f) Whether Defendant violated Or. Rev. Stat. §§ 646.608(1)(b), 646.608(1)(e), 646.608(1)(g), and/or 646.608(1)(i);

g) Whether Defendant's violations of the UTPA were willful, reckless, and/or knowing;

h) Whether Plaintiff and the Oregon Subclass are entitled to statutory damages of $200 under the UTPA;

i) Whether Defendant's conduct constitutes a breach of express warranty; and

j) Whether Plaintiff and the Class are entitled to attorney fees and costs, and in what amount.

Federal Rules of Civil Procedure, Rule 23(b)(3) Factors

84. **Common Issues Predominate**. Common issues of fact and law predominate because Plaintiff's claims are based on Defendant's common course of conduct. Whether the Product is labeled "ZERO SUGAR," whether it contains allulose, whether allulose is a sugar, and whether the resulting representation is unlawful and deceptive are questions capable of classwide resolution on common evidence — principally, Defendant's own uniform label and its own formulation records.

85. **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a) Given the size of the claims of individual Class Members, as well as the resources of Defendant, few Class Members, if any, could afford to seek legal redress individually for the wrongs alleged herein;

b) This action will permit an orderly and expeditious administration of the claims of Class Members, will foster economies of time, effort, and expense, and will ensure uniformity of decisions;

c) Any interest of Class Members in individually controlling the prosecution of separate actions is not practical, creates the potential for inconsistent or contradictory judgments, and would create a burden on the Court's resources; and

d) Without a class action, Class Members will continue to suffer damages, Defendant's violations of law will proceed without remedy, and Defendant will continue to reap and retain the substantial proceeds of its wrongful conduct.

86. **Notice to the Class**. Notice can be accomplished by publication for most Class Members. Upon information and belief, some Class Members may be identified through

Defendant's own records and through the records of the online and brick-and-mortar retailers through which Defendant sells the Product.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### VIOLATIONS OF THE UNLAWFUL TRADE PRACTICES ACT
### Or. Rev. Stat. §§ 646.605, *et seq.*
### (On Behalf of the Oregon Subclass)

87. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

88. Plaintiff brings this claim under the UTPA, Or. Rev. Stat. §§ 646.605, *et seq.*, on behalf of himself and the Oregon Subclass, who were subject to Defendant's above-described unlawful conduct.

89. Plaintiff and Defendant are "persons" within the meaning of Or. Rev. Stat. § 646.605(4).

90. Defendant is engaged in the sale of "goods" as defined by Or. Rev. Stat. § 646.605(6)(a).

91. Defendant is engaged in "real estate, goods or services" transactions within the meaning of Or. Rev. Stat. § 646.605(8), affecting consumers in Oregon.

92. Defendant engaged in the design, packaging, promoting, marketing, advertising, distribution, labeling, and/or sale of the Product.

93. Defendant violated Or. Rev. Stat. § 646.608(1)(b) by causing the likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods. Defendant's Product name and labeling cause the likelihood that reasonable consumers

will confuse or misunderstand the Product to be a beverage containing no sugar, when in fact it is sweetened with approximately ten grams of sugar per can.

94. Defendant violated Or. Rev. Stat. § 646.608(1)(e) by representing that goods have characteristics, ingredients, uses, benefits, quantities or qualities that the goods do not have. Similarly, Defendant violated Or. Rev. Stat. § 646.608(1)(g) by representing that goods are of a particular standard, quality, or grade when they are of another.

95. The Product does not have the characteristic, ingredient, quantity, or quality of containing zero sugar. It contains approximately ten grams of sugar per can in the form of allulose.

96. The Product is not of the standard, quality, or grade of a lawfully labeled "zero sugar" beverage. It is of another standard: a sweetened beverage that federal and Oregon law forbid Defendant to label as it did.

97. Defendant violated Or. Rev. Stat. § 646.608(1)(i) by advertising goods or services with intent not to provide them as advertised. Through its labeling and its online marketing, Defendant advertised the Product as containing zero sugar, which it does not.

98. Finally, Defendant violated Or. Rev. Stat. §§ 646.608(1)(e) and 646.608(1)(g) by failing to disclose lawfully required information, and/or by failing to disclose information in the manner the law requires.

99. The legally required yet omitted information relates to the characteristics, ingredients, quantities or qualities of the good (§ 646.608(1)(e)), and/or the particular standard, quality, or grade of the good (§ 646.608(1)(g)).

100. Defendant failed to disclose information, and failed to disclose information in the particular manner, required by the FFDCA, 21 U.S.C. § 301, *et seq.*, and its implementing

regulations.

101. As described herein, Defendant thus failed to disclose legally required information relating directly to the characteristics, ingredients, quantities, or qualities of the Product, and/or the particular standard, quality, or grade of the Product.

102. In failing to provide the legally mandated disclosures, Defendant unlawfully sold the Product to Plaintiff and the Oregon Subclass, thereby causing their ascertainable loss of money.

103. Defendant's violations of Or. Rev. Stat. § 646.608 were willful, knowing, and/or reckless for the reasons set forth above, including because Defendant formulated the Product and knows its allulose content; because the FDA publicly and repeatedly confirmed that allulose remains a sugar under its regulations, and because Defendant is a sophisticated manufacturer charged with knowledge of the labeling requirements governing its products. Defendant knew or should have known its actions comprised violations of Oregon law.

104. Defendant intended to cause the violations complained of herein, as Defendant was aware of the substantial and growing market of consumers who seek to avoid sugar and who will pay a premium for products that contain none.

105. As a result of Defendant's willful, knowing, and/or reckless violations of Or. Rev. Stat. § 646.608(1), Plaintiff and the Oregon Subclass suffered an ascertainable loss of money or property.

106. Plaintiff and the Oregon Subclass suffered an ascertainable loss measured by the difference between the value of the Product as represented, as reflected in the purchase price, and the lesser value of the Product actually received. Alternatively, Plaintiff and the Oregon Subclass's loss is measured by the purchase price paid because they would not have purchased a

product represented as sugar-free had they known it contained sugar. In the further alternative, Plaintiff and the Oregon Subclass's loss is measured by the purchase price paid for a Product purchased in an unlawful transaction.

107. Pursuant to Or. Rev. Stat. § 646.638(1) and (8)(a), Plaintiff (on behalf of himself and the Oregon Subclass) seeks actual damages or statutory damages in the amount of $200, whichever is greater.

108. The applicable limitations period referred to by the class definition is expansive and extends back years based on the "delayed discovery" rule explicitly provided for in the Oregon Unlawful Trade Practices Act. See Or. Rev. Stat. § 646.638(6). By design, the noncompliant labeling practices were impossible for the typical consumer to discover. Plaintiff and the Oregon Subclass did not know, and could not have known, that Defendant's 'zero sugar' representations were false, misleading, and/or illegal. Thus, the applicable limitations period—and the corresponding class period—extends back to the very first date that Defendant began engaging in the unlawful conduct alleged herein.

109. Plaintiff and the Oregon Subclass further seek attorney fees and costs pursuant to Or. Rev. Stat. § 646.638(3).

## SECOND CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY
### (On Behalf of the National Class)

110. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

111. Plaintiff brings this claim for breach of express warranty on behalf of himself and the National Class.

112. At all times relevant all the following States and Territories have codified and adopted the provisions of the Uniform Commercial Code: Ala. Code § 7-2-313; Alaska Stat. § 45.02.313; Ariz. Rev. Stat. § 47-2313; Ark. Code. § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. § 42a-2-313; 6 Del. Code. § 2-313; D.C. Code. § 28:2-313; Fla. Stat. § 672.313; Ga. Code. § 11-2-313; Haw. Rev. Stat. § 490:2-313; Idaho Code § 28-2-313; 810 Ill. Comp. Stat. 5/2-313; Ind. Code § 26-1-2-313; Iowa Code § 554.2313; Kan. Stat. § 84-2-313; Ky. Rev. Stat. § 355.2-313; 11 Me. Rev. Stat. § 2-313; Md. Code. § 2-313; Mass. Gen. Law Ch. 106 § 2-313; Mich. Comp. Laws § 440.2313; Minn. Stat. § 336.2-313; Miss. Code § 75-2-313; Mo. Rev. Stat. § 400.2-313; Mont. Code § 30-2-313; Neb. Rev. Stat. U.C.C. § 2-313; Nev. Rev. Stat. § 104.2313; N.H. Rev. § 382-A:2-313; N.J. Stat. § 12A:2-313; N.M. Stat. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. § 25-2-313; N.D. Cent. Code Ann. § 41-02-31; Ohio Rev. Code § 1302.26; Okla. Stat. tit. 12A § 2-313; Or. Rev. Stat. § 72.3130; 13 Pa. C.S. § 2313; P.R. Laws. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-313; S.C. Code § 36-2-313; S.D. Stat. § 57A-2-313; Tenn. Code § 47-2-313; Tex. Bus. & Com. Code § 2-313; Utah Code § 70A-2-313; Va. Code § 8.2-313; Vt. Stat. 9A § 2-313; W. Va. Code § 46-2-313; Wash. Rev. Code § 62A.2-313; Wis. Stat. § 402.313 and Wyo. Stat. § 34.1-2-313.

113. Defendant, as the seller, marketer, and/or labeler of the Product (a good), made express warranties to Plaintiff and the Class through the Product's labeling and packaging.

114. Specifically, through the Product's labeling, Defendant expressly warranted, *inter alia*, that the Product was "ZERO SUGAR" and/or contained "0 GRAMS SUGAR."

115. Those affirmations and descriptions became part of the basis of the bargain. They appear on the face of every can and in the name of the Product itself. Plaintiff and

members of the National Class read them, understood them, and relied upon them in deciding to purchase the Product.

116. Defendant thereby expressly warranted that the Product contains no sugar.

117. Defendant breached that express warranty. The Product does not conform to the affirmation, promise, or description: each 12 fl. oz. can contains approximately ten grams of sugar in the form of allulose.

118. Liability for breach of express warranty does not depend upon Defendant's state of mind. It is sufficient that the goods failed to conform to the affirmations and descriptions Defendant made.

119. Defendant was provided with notice of its breach of express warranty through a letter dated September 8, 2026.

120. As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and members of the National Class have been damaged in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

**UNJUST ENRICHMENT**
**(On behalf of the National Class)**

121. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

122. Plaintiff brings this claim for unjust enrichment on behalf of himself and the National Class, in the alternative that Plaintiff lacks an adequate remedy at law.

123. Defendant should have never sold the Product due to its labeling which violated federal law.

124. As a result of Defendant's selling the Product, Defendant received a benefit which was conferred upon them by Plaintiff and the National Class (and/or at their expense), and it is unjust for Defendant to retain that benefit.

125. Under the circumstances, it is against equity and good conscience to permit Defendant to retain the ill-gotten benefits that they received from Plaintiff and National Class members.

126. As a direct and proximate result of Defendant's actions, Defendant has been unjustly enriched. Plaintiff and the National Class members have a right to restitution and/or disgorgement in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and on behalf of the members of the National Class and Oregon Subclass defined herein, pray for judgment and relief on all Causes of Action as follows:

A. An order certifying that the action may be maintained as a Class Action, certifying the Class and Oregon Subclass, appointing Plaintiff as Class Representative, and designating Plaintiff's counsel as counsel for the Class;

B. On the First Cause of Action, an award of actual damages or statutory damages of $200 per member of the Oregon Subclass, whichever is greater, pursuant to Or. Rev. Stat. § 646.638(1) and (8)(a);

C. On the Second Cause of Action, an award of damages in an amount to be proven at trial to Plaintiff and the National Class;

D. On the Third Causes of Action, an order requiring Defendant to make restitution to Plaintiff and the National Class pursuant;

E. Pre-judgment and post-judgment interest as allowed by law;

F. Reasonable attorney fees pursuant to Or. Rev. Stat. § 646.638(3) and as otherwise allowed by law;

G. Costs and disbursements of this suit; and

H. Such other and further relief as the Court may deem necessary or appropriate, excluding injunctive relief, which Plaintiff does not seek.

**JURY DEMAND AND NOTICE TO ATTORNEY GENERAL**

Plaintiff and the Class, by and through undersigned counsel, hereby request a trial by jury as to all issues so triable. Further, upon filing this action, this Complaint shall be mailed to the Attorney General of the State of Oregon pursuant to Or. Rev. Stat. § 646.638(2), and proof of receipt of same shall be filed with this Court.

Dated: September 29, 2026

*/s/ Ryan Casey*

M. Ryan Casey, OSB # 152824
THE CASEY LAW FIRM, LLC
PO Box 1055
Silverthorne, CO 80498
Tel: (970) 372-6509
Email: ryan@rcaseylaw.com

Gillian L. Wade, *PHV app. forthcoming*
Marc Castaneda, *PHV app. forthcoming*
Sara Avila, *PHV app. forthcoming*
WADE KILPELA SLADE LLP
2450 Colorado Avenue, Suite 100E
Santa Monica, CA 90404
Tel: (310) 667-7273
Email: gwade@waykayslay.com
Email: marc@waykayslay.com
Email: sara@waykayslay.com

*Attorneys for Plaintiff and the Proposed Class*